**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
**J. Mark Coulson**
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P:(410) 962-4953 — F:(410) 962-2985

March 17, 2026

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE:     *Patricia R. v. Frank Bisignano, Social Security Administration*
        Civil No. 1:25-cv-01713-JMC

Dear Counsel:

Patricia Rodman ("Plaintiff") petitioned this Court on May 30, 2025, to review the Social Security Administration's ("SSA" or "Defendant") final decision denying her claims for disability insurance benefits ("DIB"). (ECF No. 1). The Court has considered the record in the case as well as the parties' dispositive filings. (ECF Nos. 12, 14). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court must uphold an agency decision if the decision is supported by substantial evidence and was reached through application of the proper legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will affirm ALJ's and Appeals Council's determinations for the reasons explained below.

## I.     Procedural Background

Plaintiff filed her current Title II application for DIB on June 28, 2021, alleging disability as of March 31, 2021. (Tr. 82).[1] The SSA initially denied Plaintiff's application on January 12, 2022 and upon reconsideration on August 15, 2023. *Id.* at 18. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* A telephonic hearing took place on May 29, 2024. *Id.* Concluding that Plaintiff was not under disability since the alleged date of onset on March 31, 2021, ALJ William Pflugrath denied Plaintiff's claim on June 17, 2024. *Id.* at 33. Plaintiff appealed, and the decision became final when the Appeals Council concluded there was no basis upon which to grant Plaintiff's request for review. *Id.* at 1-7.

## II.    The ALJ's Decision

In arriving at the decision to deny Plaintiff's claims, the ALJ followed the five-step

---

[1] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 8) filed in this case. When citing to specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

sequential evaluation of disability set forth in the Secretary's regulations.  20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).  If the first three steps do not yield a conclusive determination, the ALJ must then assess the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work[,]" by considering all of the claimant's medically determinable impairments regardless of severity.  *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation.  If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

At step one in this case, the ALJ and Appeals Council found that Plaintiff had not engaged in substantial gainful activity "since March 31, 2021, the alleged onset date."  (Tr. 21).  At step two, the ALJ and Appeals Council determined that Plaintiff suffered from the following severe impairments: "osteoarthrosis and allied disorders; other and unspecified arthropathies."  *Id.*

At step three, the ALJ and Appeals Council determined that Plaintiff's impairments or combination of impairments do not meet or equal one of the listed impairments in the regulations. *Id.*; 20 CFR §§ 404(p), Appendix I (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.925, 416.926).  In assessing Plaintiff's step-three impairments, the ALJ reasoned in part:

> The first functional area is understanding, remembering or applying information. In this area, the claimant has mild limitation. Claimant reports significant memory problems, and it has recently been noted that her history of generalized anxiety could be impeding her memory (24F). However, she has no trouble playing games on the internet to challenge her mind (Id.). She is also able to remember to take medication by making medication boxes for two weeks (Id.). On recent evaluation, she scored 26/30 on the MoCA (Id.). On consultative exam in 2021, she scored 28/30 on the MMSE (8F). She was able to follow a 3-step command, had good fund of general knowledge, and practical judgment (Id.). Her mental health treatment notes document intact memory and independence in activities of daily living (17F, 19F). At one point, her husband indicated she followed written instructions "pretty good" and followed spoken instructions "all right" (8E). Considering these factors, I find claimant has only mild limitation in the abilities to learn, recall, and use information to perform work activities.
>
> The next functional area is interacting with others. In this area, the claimant has mild limitation. Claimant has reported that she does not like crowds (13E), and past treatment notes indicate that she had a hard time with small talk and did know how to exit crowds (2F/73-74). However, on consultative exam in 2021, she did not

mention any serious interpersonal problems (8F). It was noted that she previously got along with supervisors and clients at work (Id.). Additionally, on exam, she was appropriately dressed and groomed, and expressed herself well verbally (Id.). In her function reports, she reported she could go out alone, shop in stores, and get along ok with authority figures (4E, 13E). She also spent time with others and went to church on a regular basis (Id.). She did not report significant problems getting along with others (Id.). In one function report, she indicated that she was "pretty easy to get along with" (4E). Therefore, I find claimant has only mild limitation in the abilities to relate to and work with others.

The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has mild limitation. Claimant has a history of problems paying attention and concentrating (2F/73; 17F/6-10). In a recent evaluation, however, her attention/concentration was normal (24F). Treatment notes also indicate that she does better focusing and concentrating with medication (17F, 19F). In addition, she has had logical, coherent, and relevant thoughts, although when she started treatment, she had difficulty staying on topic (Id.). On consultative exam in 2021, she was able to follow a 3-step command and scored 28/30 on the MMSE (8F). She had no difficulty subtracting by 7's (Id.). She has also reported doing cross stitch and puzzles, and she has been able to drive, shop, handle money, and make her own meals (4E, 13E). Considering this and the other evidence of record, I find she has no more than mild limitation in the abilities to focus attention on work activities and stay on task at a sustained rate.

The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. Claimant has a history of depression and anxiety with symptoms such as feeling fearful, worrying a lot, rapid speech, confusion, distractibility, racing thoughts, inability to concentrate, anxiety attacks, and easy fatigability (17F, 19F). She reports difficulty with stress and changes in routine (4E, 13E). Claimant, however, has had limited conservative treatment. She had mental health treatment prior to 2020, but no psychotherapy since late 2019 (2F). Between early 2021 and 2023, her primary care provider prescribed her medication (6F/8; 7F/15, 44; 8F; 17F/6). After she started mental health treatment in 2023, she improved with medication (17F/2-4; 19F/2-4). She had a panic attack in June 2023, but it only lasted five minutes and alprazolam relieved her symptoms (21F/4). She had some exacerbation of symptoms in July/August 2023, but this was around the anniversary of her mother's death (19F/7; 19F/11-12). In October 2023, she was stable although she was sad her brother-in-law had cancer (19F/15-16). She was not having panic attacks (Id.). In late 2023, she was happier and doing well (19F/19). She generally has not wanted medication changes, and treatment notes indicate that she could perform all activities of daily living independently and had no difficulty using decision-making strategies (17F, 19F). At one point, she was trying to find a job (19F/2-4). Considering these factors and the other evidence of record, I find she has only mild limitation in the abilities to regulate emotions, control behavior, and maintain well-being in a work setting.

3

(Tr. 23-24). Finding that Plaintiff had not proved that one or more of the above-mentioned severe impairments met or equaled one of the listed impairments in the SSA regulations, the ALJ determined Plaintiff's RFC as follows:

> I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: She can only occasionally climb stairs, balance, stoop, and crouch. She can never climb ladders, kneel, or crawl. She can frequently but not always finger objects (i.e., fine manipulation) with either hand. She is limited to standing or walking up to four hours in an eight-hour workday. She must be allowed to occasionally alternate between sitting and standing positions at the workstation.1 She can have no exposure to extreme cold and no exposure to sustained, loud noises. She can have no more than occasional exposure to workplace hazards such as unprotected heights or dangerous machinery. She is limited to only nonproduction-paced tasks as to tempo and capacity, i.e., non-assembly line work.

*Id.* at 24.  In support of its RFC determination, the ALJ reasoned in part:

> I find that these impairments limit claimant to light-level work with limited postural activities, most especially in the areas of climbing ladders, kneeling, and crawling. Additionally, given claimant's osteoarthritis in her hands and complaints of hand pain, I find that she can only frequently finger objects. Considering the combined effect of her impairments, including difficulty standing and walking, I find that she can only stand or walk up to four hours in an eight-hour workday and must be allowed to occasionally alternate between sitting and standing positions at her workstation. Considering her sensitivity to cold temperatures, which could exacerbate her impairments, I find that she can have no exposure to extreme cold. Considering her alleged left-sided hearing loss, I find that she can have no exposure to sustained, loud noises. Given the combined effect of her impairments, I find that she can have no more than occasional exposure to workplace hazards and is limited to nonproduction-paced tasks. I do not finding claimant requires an assistive device for ambulation, and even though her left shoulder is affected by arthritis, I do not find reaching limitations because, as discussed further below, claimant has full range of the shoulder without pain (20F/13).
> …
> Claimant's allegations of significant cognitive deficit are not well-supported considering her activities of daily living. Additionally, in March 2024, she scored 26/30 on the MoCA (24F), and previously had scored 28/30 on the MMSE (8F). Her mental health treatment notes show no significant cognitive deficit (17F, 19F). Therefore, I do not find significant mental limitations other than the limitation to nonproduction-paced tasks.
>
> Finally, State agency medical/psychological consultants have found that claimant has no more than mild mental limitation and can perform light-level work, further supporting my findings (2A, 4A).

*Id.* at 26, 28. Prior to the established date of disability onset, the ALJ concluded that Plaintiff was capable of performing past relevant work as an accounting clerk. *Id.* To that end, the ALJ reasoned,

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform it as actually and generally performed. Per the vocational expert, an individual with the claimant's residual functional capacity can perform this job as actually and generally performed. I have determined that there are no actual conflicts between the vocational expert's testimony and the limitations in the hypothetical residual functional capacity. The vocational expert did explain that the DOT does not differentiate between which hand is used with regards to fingering but that his testimony regarding that issue was based on his professional experience as a rehabilitation counselor.

*Id.* at 31.

Finally, given Plaintiff's RFC, age, education, and work experience, the ALJ determined that Plaintiff could perform the following jobs which existed in significant numbers in the national economy: (1) clerical assistant, with approximately 40,000 such positions in the national economy; (2) marker, with approximately 164,000 such positions in the national economy; (3) router, with approximately 25,000 such positions in the national economy. *Id.* at 33. Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since March 31, 2021, the date of the alleged onset of disability. *Id.*

### III.    Legal Standard

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (other citation and internal quotations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

### IV.    Analysis

Plaintiff argues on appeal that the ALJ's decision was not supported by substantial evidence. Specifically, Plaintiff faults the ALJ's RFC determination for failing to properly determine the Plaintiff's mental disability limitations at step two and for "fail[ing] to comply with the regulations in assessing the impact of Plaintiff's mental conditions on the residual functional capacity." (ECF No. 12 at 5). For the reasons that follow, the ALJ's RFC determination is

supported by substantial evidence.  As such, I will affirm the case.

    a.   <u>The ALJ's and Appeals Council's RFC Determination is Supported by Substantial Evidence</u>

"An RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a 'regular and continuing basis.'" *Rodney M. v. Kijakazi*, No. CV 23-0947-CDA, 2024 WL 1097192, at \*3 (D. Md. Mar. 13, 2024) (quoting 20 C.F.R. § 416.945(b)–(c)).  The ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work" in determining a claimant's RFC. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)).  "An ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical functions listed in 20 C.F.R. § 404.1545(b), including sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . [that] may reduce [a claimant's] ability to do past work and other work." *Rodney M.*, 2024 WL 1097192, at \*3 (internal citation omitted).  As previously explained by the Fourth Circuit, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311).  Thus, "A proper RFC analysis proceeds in the following order: (1) evidence, logical explanation, and conclusion." *Id.* at 388 (cleaned up).  The Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," though, and has explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636; *see also Monroe*, 826 F.3d at 188.  A "necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("In other words, the ALJ must *both* identify evidence that supports her conclusion *and* build an accurate and logical bridge from [that] evidence to her conclusion.") (internal quotation omitted) (emphasis in original).

A claimant's RFC represents "the most [he] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Plaintiff correctly points out that in determining a claimant's RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [her] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)).  An RFC analysis requires (1) evidence, (2) a logical explanation, and (3) a conclusion. *Id.* Plaintiff is entitled to a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts…and nonmedical evidence" *Id.* A "logical bridge" connecting the evidence and conclusion is "shorthand" for "the most minimal of articulation requirements. *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024). Even when an ALJ does not assess exertional capabilities on an explicit function-by-function basis, there is no per se rule requiring remand when an ALJ does not perform such an analysis. *Mascio*, 780 F.3d at 636.

Indeed, "the driving consideration is whether the ALJ's analysis allows for meaningful judicial review," *Lail v. Kijakazi*, No. 21-2133, 2022 WL 1711809, at *1 (4th Cir. May 27, 2022). "Thus . . . remand is appropriate only where 'inadequacies in the ALJ's analysis frustrate meaningful review,' such as when an ALJ fails to assess a claimant's capacity to perform relevant functions or does not resolve material disputes in the record." *Delesline-Meggett v. Comm'r of Soc. Sec.*, No. 21-1859, 2023 WL 8230802, at *1 (4th Cir. Nov. 28, 2023).

At Steps Two and Three, the SSA evaluates mental impairments by using a specialized technique known as the "Psychiatric Review Technique" (the "PRT"). *See* 20 C.F.R. § 404.1520a. Under the PRT, an ALJ must assess a claimant's abilities to (1) understand, remember, or apply information, (2) interact with others, (3) concentrate, persist, or maintain pace, and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). From there, the ALJ determines one of five applicable ratings, those being (1) no limitation, (2) mild limitation, (3) moderate limitation, (4) marked limitation, or (5) extreme limitation. 20 C.F.R. § 404.1520a(c)(4). After applying the special technique, the ALJ must assess the claimant's RFC. *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4 (July 2, 1996). "An RFC assessment is 'more detailed' than a special-technique analysis—to determine RFC, the ALJ must 'itemiz[e]' any functional deficits resulting from the limitations identified during the special-technique analysis." *Bereniced W. v. O'Malley*, Civil No. 23-1856-CDA, 2024 WL 3925082, at *2 (D. Md. Aug. 23, 2024). As such, the ALJ "must do so even if they previously found that the claimant's mental limitations were 'mild.'" *Id.* (citing *Felix S. v. Comm'r of Soc. Sec.*, 630 F. Supp. 3d 423, 430 (W.D.N.Y. 2022)).

Plaintiff points to *Berniced W.*, where a medical provider opined that the plaintiff had a mild limitation in concentrating, persisting, or maintaining pace. *Id.* The ALJ there found that opinion persuasive and by extension, adopted the finding of a mild limitation at step two. *Id.* The Court noted that even though the ALJ indicated he would explain how the mild limitation affected her RFC, he failed to do so. *Id.* Recognizing that this failure constituted reversable error, the Court remanded the case on those grounds. *Id.* at *3. Plaintiff further points to *Harold S. v. O'Malley*, where a West Virginia court recommended that a district judge remand a case for further proceedings when the ALJ failed to "go beyond affixing the boilerplate" criteria because he failed to provide a more detailed assessment of the plaintiff's mild limitations in the RFC assessment. *Harold S. v. O'Malley*, CIVIL ACTION NO. 5:24-CV-00004, 2024 WL 2837611, at *7 (S.D.W.Va. May 7, 2024) *report and recommendation adopted sub nom. Shrewsbury v. O'Malley*, CIVIL ACTION NO. 5:24-cv-00004, 2024 WL 2834502 (S.D.W. Va. June 4, 2024). Plaintiff further emphasizes that certain RFC limitations do relate to certain PRT domains; however, the inclusion of a limitation for one domain is not necessarily sufficient to address other domains. (ECF No. 12 at 7); *Mascio*, 780 F.3d at 638. ("[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace."). Thus, courts must decide whether an ALJ's RFC assessment accounts for the PRT. *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020) ("[A]n ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation' in the claimant's RFC.") (internal quotations omitted).

Plaintiff argues that the ALJ's PRT discussion "failed to adequately discuss positive evidence" and even if the ALJ did properly determine the PRT, that the RFC does not adequately account for it. (ECF No. 12 at 9). As an initial matter, the Court is satisfied that the ALJ's

7

determination of the PRT properly accounted for positive evidence. For example, the ALJ credited the Plaintiff's testimony concerning significant memory problems, her Montreal Cognitive Assessment ("MoCA test"), mental health treatment notes, and other medical exams in each of the four PRT categories. (TR. 23-24). While Plaintiff argues the ALJ's reliance on the MoCA results without an opining physician's opinion constituted error, the Court disagrees. As Commissioner points out, the ALJ did not interpret raw data or render a diagnosis; rather, he considered a cognitive screening result as one piece of evidence. (ECF No. 14 at 8); *see also* 20 C.F.R. 404.1520 (a)(4); 20 C.F.R. 404.1502 (f). Moreover, the Commissioner correctly points to the State Agency's psychological consultants' determination that Plaintiff exhibits no more than mild "Paragraph B" limitations. Tr. 28, 82-87, 89-98. The ALJ considered the Plaintiff's husband's testimony as well. Tr. 22-23.

Turning to whether the ALJ's RFC assessment adequately accounts for the PRT, the ALJ reasoned that the allegations of significant cognitive deficit are not well-supported considering the Plaintiff's activities of daily living, her MoCA scores, mental health treatment notes, and as such, the evidence does not support a finding of "significant mental limitations other than the limitation to nonproduction-paced tasks." Tr. 28. The RFC restricted Plaintiff to tasks that do not require a production-pace task load and no more than occasional exposure to workplace hazards. Tr. 24. The ALJ continued to note that the State Agency consultants found no more than a mild mental limitation and that Plaintiff "can perform light-level work, further supporting [the ALJ's] findings." *Id.* at 28. Plaintiff urges that such an explanation does not account for "why mild limitation in the PRT domain of concentration, persistence, and maintaining pace resulted in a pace limitation in the RFC, while the same mild degree of limitation in the other PRT domains did not result in some form of RFC limitation." (ECF No. 12 at 7). It is true that the ALJ did not incorporate an explicit, separate discussion for each of the remaining three Paragraph B categories. However, the failure to do so does not automatically warrant remand if the RFC analysis adequately considers her limitations. *Mascio*, 780 F.3d at 637. In the Court's view, it does. As Commissioner points out, the ALJ considered the Plaintiff's mental health testimony concerning her depressed mood and anxiety, her memory problems, Xanax use, and focus issues. Tr. 25. The ALJ considered Plaintiff's daily activities and psychological testing and concluded that the record as a whole did not support her claims. *Id.* at 23. While the ALJ named only the concentration, persistence, and pace category, it can hardly be said that the RFC as a whole fails to consider her ability to remember or apply information, interact with others, or manage herself. Indeed, the RFC restricts Plaintiff to light-level work with limited postural activities and several other limitations directly tied to Plaintiff's physical impairments. The Court has not been left to guess at how the ALJ came to his opinions. *Mascio*, 780 F.3d at 637. Moreover, this RFC is unlike that in *Berniced W.*, where the ALJ failed to discuss how any mild limitations impacted the RFC after indicating he would do so. *Berniced W.*, 2024 WL 3925082, at *2. Therefore, the Court is satisfied that the ALJ's opinion is supported by substantial evidence. As such, I will affirm the case.

## V.    Conclusion

In sum, the Court agrees with Commissioner that the ALJ and subsequently the Appeals Council adequately explained Plaintiff's RFC determination. In other words, the ALJ's and Appeals Council's RFC determination for Plaintiff is supported by substantial evidence for the

reasons explained above. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED.  The Clerk of the Court is accordingly asked to CLOSE this case.

Despite the informal nature of this letter, it is an Order and Opinion of the Court, and the Clerk is directed to docket it as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge